# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

BRADY N. GIACOMO,         )
                                            )

        Plaintiff,       )
                                            )

v.                             )        Case No. CIV-24-213-JAR
                                            )

FRANK BISIGNANO,[1]      )
Commissioner of the Social     )
Security Administration,     )
                                            )

        Defendant.     )

## OPINION AND ORDER

The claimant Brady N. Giacomo requests judicial review pursuant to 42 U.S.C. § 405(g) of the denial of benefits by the Commissioner of the Social Security Administration. She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Leland Dudek as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied.  If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on June 18, 1987, and was 31 years old on the date the application was filed. (Tr. 761).  She was 36 years old at the time of the most recent administrative hearing. (Tr. 772-802). She has completed her GED and has no past relevant work experience. (Tr. 761). However, as found by the ALJ, Claimant worked after the application date, but this work activity did not rise to the level of substantial gainful activity. "Indeed, the claimant had earnings in every single quarter of 2018 and 2019, as well as the first quarter of 2020, from Red River Health Care Systems. None of the earnings were in excess of monthly SGA levels for the requisite years. (Exhibits 8D and 19D/8)." (Tr. 734). Claimant alleges she has been unable to work since an amended onset date of August 29, 2018. (Tr. 775, 996).

### Procedural History

Claimant applied for supplemental security income (SSI) under Title XVI of the Social Security Act in August 2018, claiming disability as of that date. (Tr. 54, 280, 304, 731). After exhausting her administrative remedies, Claimant commenced a civil action in the United States District Court for the Eastern District of Oklahoma and the Court found that the ALJ decision erred in failing to explain how her obesity was considered. (Tr. 848-60). She filed a second Title XVI application in February 2021 and amended her alleged onset date. (Tr. 1732, 1783). An ALJ issued an unfavorable decision, which was remanded back to him by the agency for further proceedings. (Tr. 731). Claimant subsequently filed another Title XVI application in April 2023. (Tr. 731-32). The Appeals Council ordered that all three claims be associated, and a remanded decision be issued addressing all three claims. (Tr. 732). On February 28, 2024, the ALJ issued a decision finding

that Claimant was not disabled. (Tr. 731-62). She now seeks judicial review of the ALJ's February

2024 decision. This Court has jurisdiction under 42 U.S.C. § 1383(c)(3).

## Decision of the Administrative Law Judge

In the February 28, 2024 decision, the ALJ acknowledged that he had considered the

evidence in its entirety, including all three claims. (Tr. 734). The ALJ made his decision at step

five of the sequential evaluation.  At step two, the ALJ found that Claimant had several severe

physical and mental impairments, including epilepsy; diabetes mellitus type II with diabetic

neuropathy; chondromalacia patella of the right knee; asthma; obesity; bipolar disorder; major

depressive disorder; anxiety disorder; borderline intellectual functioning, and PTSD (20 CFR

416.920(c)). (Tr. 734). The ALJ also found Claimant had additional non-severe impairments that

"include[d] impairments which may have caused more than minimal limitation in the short-term,

but responded well to treatment, with improved symptomatology, and therefore failed to meet the

durational requirement of causing more than minimal limitation for at least 12 months to be

considered severe; chronic impairments for which the claimant receives only routine, conservative

care, and the findings and/or symptoms related to which do not indicate more than minimal

limitation; and impairments that were diagnosed and/or treated prior to the amended alleged

disability onset date, the residual effects of which do not cause more than minimal limitation." *Id.*

Next, he found that Claimant's impairments did not meet a listing. (Tr. 735).  He explained

that Claimant retained the residual functional capacity ("RFC") to perform light work as defined

in 20 C.F.R. § 416.967(b) with the following qualifications:

> occasional climbing of ramps and stairs; no climbing of ladders,
> ropes, or scaffolds; frequent balancing; occasional stooping,
> kneeling, crouching, and crawling; frequent handling and fingering
> bilaterally; avoidance of frequent exposure to dust, odors, fumes,
> and pulmonary irritants; and avoidance of even occasional exposure
> to unprotected heights, unprotected moving mechanical parts, and

dangerous machinery. She can understand, remember, and carry out simple, routine, and repetitive tasks. She can focus for two-hour periods with routine work breaks and pace and persist for an eight-hour workday and 40-hour work week. She can interact with supervisors and coworkers on an occasional superficial work basis to learn tasks and accept criticism. She can tolerate incidental interaction with the general public where frequent conversation or communication is not required. She can respond appropriately to changes in a routine work setting, which are gradually introduced, infrequent, and well-explained. She can avoid workplace hazards.

(Tr. 739).

At step four, the ALJ found Claimant had no previous relevant work. (Tr. 761). Next, the ALJ proceeded to step five and determined that Claimant was not disabled because there was other work that exists in significant numbers in the national economy that she could perform. (Tr. 761-62).

## Review

The undersigned Magistrate Judge first addresses Claimant's assertions that the ALJ failed to properly evaluate the evidence supporting disability. Specifically, Claimant contends the ALJ violated SSR 96-8 because he failed to include certain mental limitations in the RFC. The record reveals, however, the ALJ thoroughly evaluated and discussed the evidence. (Tr. 739-60). Indeed, the record before the ALJ included examination findings and medical opinions from multiple physicians and State agency consultative psychologists, as well as the prior administrative records. (Tr. 731-62).

Moreover, Claimant bears the burden of showing that limitations should be included in her RFC assessment. *See Howard v. Barnhart*, 379 F.3d 945, 948-49 (10th Cir. 2004). The ALJ found that Claimant had established that she had the RFC to perform a range of light work. (Tr. 739). In reaching that conclusion, the ALJ found that Claimant's reported symptoms were inconsistent with

other evidence and also evaluated the medical source statements. (Tr. 731-62). The Court finds substantial evidence supports the ALJ's findings.

"Since the purpose of the [symptom] evaluation is to help the ALJ assess a claimant's RFC, the ALJ's [symptom] and RFC determinations are inherently intertwined." *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009). Claimant claimed to experience debilitating symptoms. However, the ALJ found that these reported symptoms were inconsistent with other evidence. (Tr. 734). This finding is due "particular deference" by the Court. *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002). That deference is appropriate here, as the ALJ found that Claimant's reported symptoms were inconsistent with: (1) objective medical evidence, (2) her activity level, (3) the gaps in her treatment, (4) the efficacy of her conservative treatment, and (5) the lack of medication side effects. (Tr. 731-62). *See* 20 C.F.R. § 404.1529(c)(4) ("[W]e will evaluate your statements in relation to the objective medical evidence.").

Regarding Claimant's activity level, the ALJ found that her activities of daily living were inconsistent with her reports of disabling symptoms. (Tr. 747). Claimant asserted

> she is not capable of independent living. *Id*. However, she also reported as follows. She lives with her husband and mother-in-law. She can manage her own finances, pay her bills on time, and manage a bank account. She can make and keep appointments but requires her husband to drive her. *Id.* She can prepare food and make simple meals. She can make the bed, but needs help with other chores. She needs help getting in and out of the bath. She spends her typical day interacting with her husband, watching movies, playing games and resting. She enjoys playing games and watching television. She does not use social media due to harassment from her ex. She uses the internet on her phone." (Tr. 747).

The "sporadic performance" of activities like performing a few household tasks "does not establish that a person is capable of engaging in substantial gainful activity," *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987), but an ALJ may consider such activities when, as here, they undercut a claimant's reported symptoms. *See Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir.

2010). The Tenth Circuit has recognized that an ALJ may consider similar activities when discounting a claimant's reported symptoms. *See Id.* (finding that an ALJ reasonably determined a claimant's description of her daily activities did not indicate significant limitations, where the claimant could care for herself, her home, and her children, and also drive, shop, handle finances, garden, visit friends, and go out to eat).

The ALJ also noted the gaps in Claimant's treatment. (Tr. 751). Claimant reported "symptoms for which she received intermittent treatment with no indication of ongoing complaints, treatment, or abnormal findings which would indicate chronicity." *Id.*

The ALJ considered Claimant's assertion that she had, at times, been referred for testing that she has been unable to afford. (Tr. 751). However, the ALJ also noted that the records indicate little in the way of ongoing complaints connected to the symptoms for which testing was recommended. *Id. See Lewis v. Berryhill*, 680 F. App'x 646, 648-49 (10th Cir. 2017) (affirming an ALJ's decision to consider the fact that the claimant did not take pain medications, so long as the ALJ considers the claimant's explanation).

Therefore, the Court rejects Claimant's argument that the ALJ did not sufficiently evaluate her subjective complaints.

Finally, Claimant contends the ALJ did not give sufficient deference to the medical evidence. A review of the record, however, including the medical opinions and prior administrative medical findings support the ALJ's assessment of Claimant's RFC.[3] Regarding Claimant's mental

---

[3] Regarding Claimant's physical limitations, State agency medical consultants Drs. Shah, and Rowlands found that she had abilities consistent with the full range of medium work. (Tr. 94-95, 108-09). The ALJ found that these prior administrative medical findings were partially persuasive in that Claimant was more limited—the ALJ limited her to a range of light work. (Tr. 20-21, 25). *See* 20 C.F.R. § 404.1520c(b). No source opined that Claimant experienced greater physical limitations than the ALJ assessed.

limitations, State agency psychologist Cynthia Kampschaefer, Psy.D., reviewed Claimant's records and determined that she could perform simple and some complex tasks with routine supervision; relate to others on a superficial work basis and to a lesser degree the general public; and adapt to changes and avoid hazards in a work situation (Tr. 110, 114-15).

On reconsideration, state agency psychologist Stephanie Crall, Ph.D., reviewed Claimant's records and determined that she could understand, recall and perform simple tasks; focus for two-hour periods with routine breaks and pace and persist for an eight-hour workday and 40- hour work week despite psychological symptoms; interact with coworkers, supervisors, and the public on a superficial level; and adapt to a usually stable environment with occasional forewarned changes in the environment (Tr. 142, 48).

Carol Gambrill, D.O., opined that Claimant could not understand, remember, or carry out simple instructions; maintain concentration and attention for extended periods of time, handle normal work stress; attend any employment on a sustained basis; and she would need unscheduled breaks. (Tr. 678). She further opined that Claimant could make simple work-related decisions; respond appropriately to supervision and coworkers; respond appropriately to work situations; and deal with changes in routine work setting. (Tr. 678).

Denise LaGrand, Psy.D., examined Claimant and determined that she appeared to function intellectually in the borderline range, which would limit her work to tasks of complexity. (Tr. 2204). She would work best in a job where interpersonal contact was incidental to the work performed, the complexity of tasks was learned and performed by rote with few variables and little judgment, and supervision was simple, direct, and concrete. (Tr. 2204).

State agency psychologist Ryan Scott, Ph.D., reviewed Claimant's records and determined that she could understand, recall and perform simple (repetitive) tasks with routine supervision

and make related judgments; focus for two-hour periods with routine breaks and pace and persist for an eight-hour workday and 40-hour workweek despite psychological symptoms; adapt to work setting and some forewarned changes in a usually stable work setting; and would work best in a setting with limited contact with supervisors and coworkers, and should avoid contact with the public. (Tr. 1610).

The ALJ's finding of moderate limitations at step three did not mandate any additional or more significant mental limitations in the RFC assessment. The ALJ reasonably found that state agency psychologists' opinions were consistent with one another apart from the finding that Plaintiff could not relate to the general public (Tr. 759-60; *see* Tr. 114-15, 1610-11). *See* 20 C.F.R. § 416.920c (ALJs consider the persuasiveness of prior administrative medical findings. The ALJ explained that Dr. Crall's finding that Plaintiff could relate to the public on a superficial level (*see* Tr. 148) was more persuasive than Dr. Scott's and Dr. Kampschaefer's finding that she should avoid contact with the public (*see* Tr. 114-15, 129-30, 1610-11). *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1172 (10th Cir. 2012) ("The ALJ, however, was free to resolve evidentiary conflicts because there is substantial evidence to support his conclusion.").

Further, the ALJ explained that he was not persuaded by the restriction to the public limitation because it was inconsistent with record evidence demonstrating that Plaintiff was able to relate to numerous medical providers, and with Plaintiff's admissions. As support, the ALJ pointed to Claimant's self-reports that she was able to get along with others, spend time with friends and family, and live with others (Tr. 737; *see* Tr. 364, 372, 408, 1804). She was pleasant and cooperative at appointments and had good rapport with providers (Tr. 737-38; *see* Tr. 2203 (never caused problems at work or in her relationships, was pleasant, cooperative, and attentive)). Finally, she reported improvement in anxiety symptoms with adherence to prescribed treatment

(Tr. 1261). Since beginning medications, she had started getting out more and being more active, including going to the gym (Tr. 1270). Moreover, she consistently had normal mental status examination results (Tr. 492, 501, 504, 511, 517, 527, 621, 627, 636, 645, 657, 666, 703, 706, 717, 1277, 1455, 2265, 2275). *See Pisciotta v. Astrue*, 500 F.3d 1074, 1078-79 (10th Cir. 2007) (ALJ reasonably discounted a physician's opinion which was inconsistent with statements from the claimant and his mother). This record evidence demonstrates substantial evidence for the ALJ's finding that Plaintiff could have incidental interaction with the general public.

As noted by the Commissioner, in evaluating Dr. Crall and Dr. Ryan's other psychological findings which he found "more persuasive", the ALJ explained that the limitation to understanding, remembering, and carrying out simple, routine, and repetitive tasks was supported by the claimant's borderline intellectual functioning (Tr. 737, 760; *see* Tr. 2204). And the ability to focus for two-hour periods with routine work breaks and pace and persist for an eight-hour workday and 40-hour work week in performing this work was consistent with Dr. LaGrand's psychological examination findings and with the dearth of abnormal mental status examination findings regarding attention and concentration in the longitudinal medical records (Tr. 760; *see* Tr. 492, 501, 504, 511, 517, 527, 621, 627, 636, 645, 657, 666, 703, 706, 717, 1277, 1455, 2265, 2275). It was also consistent with Dr. Meuniot's opinion that Plaintiff had limited but satisfactory ability to maintain attention for two-hour segments (Tr. 754; *see* Tr. 2247). *See* 20 C.F.R. § 416.920c(b)(2), (c)(1) & (2).

Therefore, the ALJ's finding that Claimant had moderate limitations in several B criteria did not mandate any specific findings within the RFC assessment. *See Morgan Comm'r of the Soc. Sec. Admin.*, No. CIV-20-362-KEW, 2023 WL 155447, at *4 (E.D. Okla. Jan. 11, 2023) ("Case law also supports that a finding of a limitation for the 'paragraph B' criteria does not necessarily

translate to a work-related functional limitation for purposes of the RFC assessment." (citing *Beasley*, 520 F. App'x at 754; *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015))).

### Conclusion

The Court finds that correct legal standards were applied by the ALJ, and substantial evidence supports the ALJ's finding that Claimant could do other work existing in significant numbers in the national economy.

Accordingly, the decision of the Commissioner is hereby **AFFIRMED.**


**IT IS SO ORDERD this 28th day of August, 2025.**


JASON A. ROBERTSON
United States Magistrate Judge
Eastern District of Oklahoma